# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID MICHAEL MONTGOMERY, | * |
| ID #412797, SID #2405284 | * |
| | * |
| Plaintiff, | * |
| | * |
| v | *  Civil Action No. ELH-15-3005 |
| | * |
| WARDEN | * |
| | * |
| Defendant. | * |

## **MEMORANDUM OPINION**

Plaintiff David Montgomery, who is self-represented, is an inmate in the Maryland correctional system.[1] He has filed correspondence (ECF 1), construed as a civil rights action under 42 U.S.C. § 1983, against the Warden of Patuxent Institution, complaining that he is receiving inadequate medical and mental health care, in violation of the Eighth Amendment to the Constitution. ECF 1. Further, he complains about the mental health evaluations he has received, changes in the medication he is prescribed, and the incentive system used to earn privileges, such as access to the phone or recreation. He also expresses concern that he has not been released from Patuxent to return to his prior place of confinement, Western Correctional Institution, as promised prior to his transfer to Patuxent. *Id.*[2]

Montgomery also alleges that he has been assaulted by a correctional officer and asserts that his life is in danger. *Id.*; *see also* ECF 2. According to Montgomery, he was assaulted by

---

[1] According to the Clerk's electronic filing system, Montgomery has filed nearly two dozen actions in this district over the past four years.

[2] Plaintiff also complains that he has not been appointed counsel to assist with a state post-conviction petition. ECF 1, 6, 8. This Court has no authority over state post-conviction matters.

Officer P. Jallan on October 5, 2015, and by a psychiatrist, Holmes, and was "almost assaulted by a[n[ inmate" five days later, then was placed on protective custody. ECF 5 at 1. He asks solely for injunctive relief mandating his transfer from Patuxent to another institution. ECF 2.

In light of the serious nature of Montgomery's allegations, this Court promptly issued an Order directing the Maryland Attorney General to respond. ECF 3. The State's response, including exhibits, is docketed as ECF 10. Based on the information provided in the response, Montgomery was notified of the Court's intention to construe the response as a summary judgment motion, and he was also informed of his right to oppose the motion. *See* ECF 11; ECF 12. Montgomery filed a reply in opposition (ECF 13), along with additional correspondence. ECF 14; ECF 17-20.

The State's response, construed as a motion for summary judgment ("Motion"), is ripe for disposition, and no hearing is necessary to resolve it. *See* Local Rule 105.6 (D. Md. 2016). For the reasons outlined below, the Court will grant the State's Motion.

## I. Preliminary Matter Regarding Competency

Montgomery is serving a 30 year sentence following a guilty plea on December 30, 2013, to second-degree murder and armed robbery. *See State of Maryland v. Montgomery,* Case No. 06K13043713 (Cir. Ct. Carroll Co.).[3] Nothing in the electronic docket suggests that Montgomery was examined with regard to mental competency in connection with his criminal conviction. His mental health condition appears to have worsened on several occasions during his ensuing incarceration, raising the question of whether he is competent to undertake self-representation in this lawsuit.

---

[3] *See* http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?

Fed. R. Civ. P. 17(c)(2) states:

A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

With respect to Rule 17(c)(2), the Fourth Circuit has observed: "The practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without counsel, is a real one." *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986). It added that "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability." *Id.* Rule 17(c)(2) recognizes the existence of some forms of mental deficiency which may affect a person's practical ability to manage his or her own affairs that goes beyond "something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders." *Id.*

Although Rule 17(c)(2) allows the court to appoint a guardian ad litem, it does not compel it to do so. Rather, it grants the court considerable discretion to issue an "appropriate order" to protect the interests of an unrepresented, incompetent litigant. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996). Close examination of the record in this case does not compel a finding of incompetency, nor a need to appoint a guardian ad litem.

## II. Standard of Review

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit …is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment

ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d). Instead, he has filed a reply in opposition, specifically noting that the submission is in response to the pending summary judgment motion. In light of the foregoing, I am satisfied that it is appropriate to address the State's submission (ECF 10) as a motion for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

5

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308,

313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Montgomery is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Factual Background

The facts of this case are not in material dispute. Division of Correction personnel are aware that Montgomery has serious mental health issues that require attention. When his mental health deteriorated, Montgomery was transferred on July 15, 2015 from Western Correctional Institution ("WCI") to the Correctional Mental Health Center at Jessup ("CMHC-J"), located at Patuxent, and placed in the acute mental health unit. ECF 10-1 at 1, Offender Case Management System ("OCMS") traffic history printout; ECF 10-2, Decl. of Kristina M. Donnelly, ¶ 4.[4] While there, plaintiff received monitoring and treatment, including therapeutic care and medication. ECF 21-1 (Summary of Mental Health Records).

CMHC-J uses a "levels system" in its treatment program, designed to reward progress and to promote increased personal responsibility by the granting of increased privileges. ECF 10-2, ¶15; ECF 10-4, CMHC-J Inmate Handbook. Upon admission to CMHC-J, Montgomery

---

[4] This opinion cites to the pagination assigned by the Court's electronic docketing system.

7

was assigned to L-1, given a smock in lieu of his personal clothing (ECF 10-2, ¶¶ 6-7), and within one hour of admission was seen by a psychiatrist. ECF 10-2, ¶ 5 at 4-7; ECF 10-3, Decl. of Randall Nero, Ph.D., ¶ 4. On July 30, 2015, Montgomery was moved from L-1 to M-1, the subacute mental health unit at CMHC-J, due to improvement in his mental health. Montgomery was given a jumpsuit and personal undergarments. ECF 10-2, ¶¶ 8-9. He was also housed on N-2, L-2, M-4, and L-4, where prisoners are permitted to wear a jumpsuit and/or personal clothing. *Id*. at ¶¶ 10-11; ECF 1-1 at 1.

Patuxent's Director, Randall S. Nero, Ph.D., avers that Montgomery has been diagnosed with a form of episodic mood disorder, for which he currently is receiving regular psychiatric services, including the administration of medication from a licensed psychiatrist. Dr. Nero further states that Montgomery is also currently receiving regular psychological services from a qualified member of the clinical team at Patuxent Institution, under the supervision of an approved clinical supervisor certified by the Board of Professional Counselors and Therapists of Maryland. *Id*. at ¶ 6; ECF 10-2, ¶¶ 12-13. He also has been seen for his medical concerns since his admission to CMHC-J. ECF 10-5, Portion 4 (medical records of July 31, 2015; September 2 and September 10, 2015; October 1, 5 and 21, 2015; and November 2, 2015).

On October 6, 2015, Montgomery filed a Prison Rape Elimination Act ("PREA") complaint against a Patuxent correctional officer. ECF 10-2, ¶ 16. The Intelligence and Investigative Division ("IID," formerly known as the Internal Investigative Unit, "IIU") was contacted, and the complaint was found to be unwarranted for an investigation. *Id*. ¶ 17.

On October 18, 2015, Montgomery filed an Administrative Remedy Procedure ("ARP") complaint in which he referred to the alleged incident of October 6, 2015, while also alleging a subsequent assault purportedly committed against him by an employee of MHM-Services, Inc.,

the mental health contractor for the Department of Public Safety and Correctional Services. *Id*. ¶ 18. IID was contacted, and the complaint was assigned IID Case No. 15-35-1506. *Id*. at ¶ 19; ECF 10-6, IID Case No. 15-35-01506 I/IR. IID Detective Roger D. Balderston investigated the two allegations of assault, one by an unnamed correctional officer later identified as Peter B. Jallah, and another by Psychology Association Joshua Holmes. Investigation uncovered no evidence or witnesses to support Montgomery's allegations,[5] and the matter was closed.

Montgomery is currently housed on L-4, at CMHC-J, in a single cell. ECF 10-2, ¶¶ 2, 20; ECF 1 at 1.

## IV. Discussion

### A. Denial of Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant or the failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison

---

[5] The investigator, Detective Balderston, uncovered evidence that Montgomery attempted to have a fellow prisoner, Buck Harrell, lie about witnessing one incident, and that other witnesses identified by Montgomery denied being present during the assaults. ECF 10-6 at 7, 9, 11.

9

staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *King*, 825 F.3d at 219. A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228. And, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Proof of an objectively serious medical condition does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Put another way, "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178.

The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Thus, "[a]ctual

knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999), is apt here: "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

Moreover, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105. In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842). Similarly, a prison official"s "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

However, even if the requisite subjective knowledge is established, an official may still avoid liability if he "responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844; *see Scinto*, 841 F.3d at 226. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Moreover, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Thus, inmates do not have a constitutional right to the treatment of their choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2nd Cir. 1986). And, disagreements between an inmate and medical staff as to the need for or the appropriate extent of medical treatment do not give rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766

F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (Actions inconsistent with an effort to hide a serious medical condition, refutes presence of doctor's subjective knowledge).

### B. Failure to Protect

Under the Eighth Amendment, prison officials must maintain humane conditions of confinement, including "'reasonable measures to guarantee the safety of the inmates.'" *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 832). Of relevance here, corrections officers have "'a duty to protect prisoners from violence at the hands of other prisoners,' for '[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Raynor*, 817 F.3d at 127 (citations omitted).

In order to prevail on an Eighth Amendment claim for failure to protect from violence, the prisoner must establish that prison personnel exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). To be sure, "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833-34 (citations omitted). But, in *Farmer* the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Rich*, 129 F.3d at 339-40. As is the case when evaluating prison medical care, a two-part inquiry that includes both an objective and a subjective component must be satisfied before an official is liable for failure to protect a prisoner. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry*, 772 F.3d at 346–47. The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, the prisoner must establish that the prison official involved had "a sufficiently culpable state of mind," amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence'" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128; *see Makdessi*, 789 F.3d at 126.

14

## C. Conclusion

Montgomery seeks a transfer to another institution. ECF 1 at 7. Such relief is an "extraordinary and drastic remedy." *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Neither the medical record nor the investigation into allegations of assault, outlined above, provide any basis on which this Court would grant preliminary injunctive relief mandating Montgomery's immediate transfer. Quite the opposite finding is appropriate, given the level of medical and investigative services provided Montgomery since his transfer to Patuxent. Indeed, in subsequent correspondence, Montgomery indicates he moved to "Level 5" placement and has been released to a "step down" program at Patuxent. ECF 17 at 12; ECF 18 at 1-2.[6]

Moreover, the record reflects that Maryland prison personnel have provided constitutionally adequate medical care with regard to Montgomery's mental health care subsequent to his transfer to

---

[6] This improvement does not mean Montgomery's mental health problems are fully resolved. He repeatedly complained that he was infested with tapeworms (which testing revealed not to be the case) (ECF 17 at 1-2; ECF 18 at 1-2), and that a "military device" may be planted in his body (ECF 17 at 1), requiring a CT scan, MRI, and other medical testing at Johns Hopkins Hospital. ECF 18 at 1-2. He also seeks a "peace order" against numerous Patuxent employees for unspecified rights violations. ECF 13 at 2. Nonetheless, the allegations contained in Montgomery's initial pleadings have been addressed in this action, and additional Court intervention is not needed at this time.

CMHC-J. Further, Montgomery's assault allegations against an officer and a mental health contractor were fully investigated and found unsubstantiated. Nothing in the record contradicts that finding.

Summary judgment in favor of the defendant is appropriate. A separate Order follows.

<u>December 12, 2017</u>                   _____/s/_____
Date                                                                 Ellen L. Hollander
                                                                              United States District Judge